We're happy to hear argument in Arvon v. Liberty Mutual Fire Insurance Company. Mr. Paz. Thank you, Your Honor. It is a pleasure to be here today. If it may please the Court, my name is Jeffrey Tots and I represent the appellant, Biejan Arvon. In this case, Liberty Mutual contends that no evidence exists that anyone at Liberty Mutual ever told Mr. Arvon that Mr. Shakiba was the at-fault driver, but that is directly contradicted by the deposition testimony of Mr. Arvon. In response to a question from Liberty Mutual's counsel about whether anyone at Liberty Mutual ever told him during any conversation that Mr. Shakiba was the at-fault driver, Mr. Arvon responded yes. He remembered one conversation in which he was told that Mr. Shakiba was the one responsible for his accident. Any ambiguity in his answer was cleared up in the very next question when he was asked, so your testimony is that someone at Liberty told you that Mr. Shakiba was responsible for your accident, to which he replied yes. And then two questions later, Mr. Arvon again answered correct to the same question as to whether he had had a conversation with someone at Liberty Mutual who told him that Mr. Shakiba was responsible for his accident. In determining whether there is a genuine dispute as to a material fact, this court in Edsel reasonable inferences in favor of the non-moving party and may not make credibility determinations or weigh the evidence. In ruling on the motion to alter amend, Judge Gesner reviewed the deposition testimony of Mr. Arvon, and instead of allowing the jury to weigh the evidence, she put herself into the shoes of the trier of fact and decided that Mr. Arvon's testimony was too vague to this. Mr. Cox, can I interrupt you for a second? So she did, the judge did rule, didn't make that point, but didn't the district court primarily rely on the fact that this deposition testimony was not cited as part of the summary judgment record and relied exclusively on Rule 56 that appears to require just such a citation? Why isn't that enough on which, enough of a basis on which to affirm the district court? Because your honor, she did not make that determination. She actually stated in her opinion at, she said whatever reason they were using, and I think it was going on the manifest injustice reason, she reviewed, she commented on the discretion by deciding to evaluate the new evidence introduced by Mr. Arvon. However, she abused her discretion in finding that the testimony of Mr. Arvon did not create a factual dispute and usurped the role of the trier of fact in deciding that Liberty Mutual had not made any misrepresentations to him. And if I could go back to the Edsel court, when Judge Gessner decided that Mr. Arvon's testimony was too vague to provide direct or circumstantial evidence, that's exactly what the Edsel court prohibited. It's the trier of factual to decide whether to believe Mr. Arvon's testimony. Therefore, Judge Gessner's ruling on the motion to alter or amend should be reversed and the case should be allowed to proceed to trial because there is a question of fact for the jury to decide. In the case of EEOC versus Lockheed Martin, it was decided the court's discretion to correct an injustice is broad. And in that case, the district court used newly presented but previously available evidence to conclude that a manifest injustice would be done by allowing the judgment to stand. I think when you look at all the actions in this case, you can see how Mr. Arvon detrimentally relied upon Liberty Mutual's actions. They paid his medical bills. They paid for his property damage all in the name of Mr. Shakiba. And then they told him that Mr. Shakiba was responsible. And that led him to the conclusion that Mr. Shakiba was the proper party to sue. And that is the misrepresentation. And unless you have any further questions, Your Honor, I will allow Mr. Meehan to proceed. So, if we find that the sort of the, this properly part of the record, Mr. Kotz, and we're left with simply the statements by the insurance company that the driver in this case was actually the, was insured, not affirmatively indicating additionally that he was the driver. So, I thought the law in Maryland was with respect to omissions as opposed to affirmative misrepresentations that that's not the kind of thing that is going to be enough to warrant an obligation on the part of the insured in this case to affirmatively speak, particularly when there's information easily available in the public record. In this case, a police report that would have led, you know, the plaintiff and his or her lawyer to easily find out who the driver was. So, I think you cited a case in Maryland that talked about affirmative misrepresentations in the case of a real estate transaction. And I get that. But if you're not, if you don't have an affirmative misrepresentation, you're left with silence and you're left with a public record that is easily discovered. And what does the law of Maryland say with respect to that? I think the law, Your Honor, is that she knows, she fails to disclose the fact that she knows. And that is, constitutes fraud by concealment. And I think, you know, I referred to the statement made in the appellee's brief where it said that Ms. Fletcher, the claims adjuster, would have told Mr. Arvan or Mr. Rosen who the driver was if she thought they were, if they thought that he wasn't, that they thought Mr. Shakiba was the driver. And I think there is plenty of evidence that was disclosed that Mr. Rosen submitted a claim package which stated in the very first line of the second paragraph that you're insured Mr. Shakiba rear-ended Mr. Arvan. And then he sent her a copy of a complaint that named Mr. Shakiba as the at-fault driver. And I think that it would be an unfair claims practice for her to remain silent knowing that they were under the misimpression that Mr. Shakiba was the driver, especially when she even said, I would have told him if I thought they were under that impression. And clearly, they were from the statement by Mr. Rosen in the letter and the lawsuit that they received. I don't have anything else. Thank you. Thank you, Your Honor. Just one thing before you, I was going to say sit down, but we're all sitting now. So do you claim there's some sort of special relationship between these people? A special relationship between Mr. Arvan and Liberty Mutual? No, a special relationship between your client and the person to whom he says gave him incorrect information. That would be the Liberty Mutual adjuster. Yeah. My client received the information that Mr. Shakiba was the driver from a record representative at Liberty Mutual. Oh, okay. So Liberty Mutual is in some sort of trust relationship with your client? I'm just not, tell me the basis for this. Well, they have a duty to my client pursuant to the Insurance Code of Maryland, which prohibits them from unfair claim settlement practices. And they have to, um, it's an unfair claim settlement practice to misrepresent pertinent facts. So that statute in itself creates a relationship between a claimant and an insurance company. All right. I've heard what you said. Thank you. Thank you. Mr. Cox, I'm sorry, just one follow up. So I think I may have misspoken and you corrected me when I said, when, when you said that the magistrate judge actually affirmatively ruled on this notion of rule 56 and citations to the record, it's clear that the deposition testimony wasn't cited to the magistrate judge when she initially made her summary judgment disposition. But you're right that she didn't affirmatively rely on that rule in the subsequent order. But, but the subsequent order is all about whether or not to set aside that ruling on of manifest injustice. And it seems to me that it's hard to argue that there was a manifest injustice when the party who had access to the information in this case, the deposition testimony never presented it to the magistrate judge in the, at the appropriate time when it should have been presented, not after the summary judgment ruling was already entered. So I'd like you to speak to that. Your honor, if judge Gessner had not weighed in on the deposition testimony, if she had stopped with, I do not see any of the exceptions under rule 59 as applicable, I would understand your point. But I think that once she weighs in on it, she's allowing the evidence does not prevent a manifest injustice. She just weighs in on the evidence that says, it doesn't change my opinion from before. So she never addresses that it did not, it was not a manifest injustice to not include this evidence. So I think that as I stated before, it's a, the question is whether she abused her discretion in making this ruling. And I'm stating that she didn't use her discretion in deciding to evaluate the new evidence. I think the error came in is once she evaluated it, we then had to go back to the summary judgment standard and decide whether it created an issue of fact and dispute. Oh, well, let's accept that for the moment. So how does a statement that some unidentified insurance representative may have told the plaintiff in this case, that a certain person was the driver? I mean, there's no indication of who that person was. So how does that create a genuine issue of material fact for trial? Well, Mr. Arvan said that it was somewhat of liberty mutual. The fact that a mechanic who doesn't practice law, who doesn't deal on the phone every day with people, doesn't remember the person's name should not be something that a jury would weigh against them. You have to decide whether every time you take a phone call, you remember that person's name. And I think the fact is he got a phone call from liberty mutual. Whether he remembers the person's name or not, I don't think should be the tipping scale. I think it becomes more important that in front of the jury, the jury can decide to weigh his credibility and they can make the determination that yes, maybe I wouldn't remember his name or he didn't remember the name. We don't believe any of his testimony, but it's the jury, the trier of facts decision as to whether to believe whether his statement about that conversation is credible. Well, how would you go in front of a jury when you don't know who the person is? I mean, how many employees does liberty mutual have? You got to move closer, Your Honor. How many people? Sorry? We lost you for a second. I'm sorry. How many employees does liberty mutual have? I don't know, but I'm going to guess it's more than 500. Right. And so you go to the jury and say one of these 500 people said something, but we don't know who it was. I mean, how could you ever create a jury issue? Well, liberty mutual's records show that he communicated with two people at liberty mutual. I hope I didn't forget her name, Ms. Lang and Ms. Fletcher. So it's one of the people he communicated with. I think that a jury can find that I received the phone call from liberty mutual about my case, and that should be enough for them to say that, believe him, that he received the phone call from liberty mutual. Why would he make it up? Thank you very much. You're welcome. Mr. Bishigin. Okay. Please, the court. The way I read the trial court's decision on the motion to alter or amend is she went through the analysis about, you know, this is clearly there's no new law involved. There's no new evidence. This evidence was available prior to the filing of the motions for summary judgment. And I'll note, too, that the appellate had six weeks to respond to the defendant's motion for summary judgment at that time. And so the court concluded that the only possible basis for the motion to alter or amend would be manifest injustice. And, you know, I think she looked at the Pacific Insurance case, and she found that there really wasn't much of, or basically no manifest injustice in the case. But then she turned to the issue of what the new evidence, or not new evidence, but the new positive evidence is, kind of as an aside, and went through it. And she noted that the evidence really isn't evidence at all. The appellant stated in a deposition, I think, basically, I think that an unnamed woman at Liberty Mutual told me at one point that Pouya Shakiba was the at-fault driver. And I think that she, the court basically concluded that that's not even real evidence. Even if I were to consider that in the manifest injustice analysis, it still wouldn't be enough to put that on that radar. And what's interesting about that testimony is he's, in his deposition, he's asked about that, and about the lady that he thinks might have told him that. And then he then continued to talk about, again, the letters, the letters that Liberty Mutual sent to him where, in the subject line, it identifies Pouya Shakiba as the insured policy holder. And if I may turn really quickly to the issue regarding the unfair claim settlement practices, there is a remedy for that if you think you have a claim under Maryland law, the Maryland Insurance Article 27-303, I believe it is, says that you can bring a claim with the Maryland Insurance Administration if you feel you have such a claim. But this really is not the forum, according to that statute, for asserting such a claim. So the reality is, the reason why the trial court was right to grant summary judgment and why I think this court is going to have to affirm that decision is because the appellant was unable to produce any evidence of any false statements. It was stated quite often that there was a false statement made, but it was never established. In the course of our litigation, there were six discovery extensions Liberty Mutual produced its entire file. Even the redacted portions of the file, the trial court reviewed in camera and found nothing that was helpful to the appellant's case. And I think I mentioned that the appellant was given six weeks to respond to the motions for finding some evidence to support the allegation that there was a material statement that was misstated and the fact remains they couldn't find it because it didn't happen. Now there were seven or eight or nine letters that Liberty Mutual sent to Mr. Arvan and or his attorney uh which indicated that the insured driver or I'm sorry the insured policy holder identified him as Pouya Shakiba and that is an entirely truthful statement. He was an insured under the policy and as the claims handler Christine Fletcher testified to in a nearly seven-hour deposition, the letters are automatically populated by the system that Liberty Mutual has in place for sending out correspondence. So the adjuster is going to type a letter, she opens up the system, there's a click to add the insured policy holder in the date of loss, she types in the body of the letter and hit send and it goes out. There's the purpose of the subject line is really a reference. It's not supposed to be an indication of who the at-fault driver was and certainly it was not. Unfortunately for the appellant, both he and his attorney mistook that to mean that that was also the at-fault driver but of course that wasn't the case. The policies are written for the policy holders but also in written into most if not all automobile policies is coverage for a permissive driver and in this case the driver, the at-fault driver driving the vehicle insured by Liberty Mutual was driving the vehicle with permission and therefore he was not a named insured under the policy. So his name is never going to be in, would never be in the subject line of any correspondence and I think the assumption would be for the adjuster and virtually any claim is that the plaintiff's lawyer is going to get or the plaintiff is at the scene, he should know who hit him. If he doesn't, the attorney's going to get the police report and discern who the the claimant is going to know who the at-fault driver is and certainly not rely on correspondence listing the insured in the memo section of the letter. Under Maryland law, in order to make a claim for fraud, the number one element is false representation of a material fact and I think that goes to Judge Diaz's question about the you have to make an affirmative statement in order for it to be actionable. You know the number one requirement is that you make a false representation of a material fact. Here there is no false statement of a material fact. Identifying Mr. Shakiba as an intruder policy holder in the subject line of the letter is an absolutely true statement and so the very first element of fraud is not met. Similarly with negligent misrepresentation, setting aside the issue of duty for a moment, the appellee clearly argues that there is no relationship between the appellant and appellee that would create a duty on their on the appellee's part to make any or not make any negative misrepresentations. That issue aside, again the first element for negligent misrepresentation is negligently making a false representation and again the representation that is being alleged to be false is identifying Mr. Shakiba as the policy holder and of course that's not a false statement. So negligent misrepresentation is not met, again setting aside that duty issue. And then turning to appellant's claim about concealment, really there is no concealment. And you know this the accident was a public event, the appellant himself was there, he knew that there were two drivers in the car, he knew that a police report was being prepared and when he got counsel, his very good attorney certainly had the opportunity to get the the facts of the accident were not Liberty Mutual's facts to conceal. And you know if we look at the seminal case in Maryland on concealment, the Labor case, what's interesting about that case is that the employer who was concealing the facts, those were his facts. He had this employment agreement, you know pretty heavy terms in an employment agreement that he had that he never told Mr. Labor about until after Mr. Labor quit his job and spent money to move and was finally hired or took the position at the employer's place of employment. It was only then that these new employment terms were sprung on him. There was no public avenue or separate avenue for him to get that information. They were held closely and tightly by the employer and that's why the court in Labor found that there was a concealment. Here, the accident was a public event. It was publicly recorded and as the insurance adjuster Christine Fletcher testified to in a deposition, I mean she was the most surprised that the appellant and his attorney didn't know who the at-fault driver was. She had no idea that they didn't get the police report, that they didn't discern that. And she even testified that had she known that, had she suspected they didn't know who the right driver was, she would have been happy to have given them a copy of the police report, but it just never came up. Well, can I ask you about that, counsel, because at some point it did come up, right, when the complaint was filed and Ms. Fletcher, I think, got a copy of the complaint. She saw for the first time that the plaintiff believed that, was misinformed as to who the driver, the actual driver was, and that occurred at some point before the statute of limitations ran. She consulted her manager and then apparently nothing happened. No one said anything, or at least the record is silent about that. Does that change anything? I mean, at that point, the insurance company did know that something was amiss. Well, I don't think it does, and I'll tell you why. You know, an insurance company's obligations to its insureds are to defend and to indemnify. So, the first thing that Ms. Fletcher did when she got the complaint after speaking to her manager is refer it out to counsel, which is what she is obligated to do for the insured. At that point, there wouldn't be any communication between her and the appellant's attorney. And once it's filed, it's out of the claims handler's hands and in the hands of defense counsel. But even if that did raise in her mind or made her aware of the fact that they didn't know who the at-fault driver was, again, I don't believe that it creates a duty to then inform them of that because the carrier's duty runs to their insureds, not to the claimants. So, and as the trial court in this case pointed out, there was no intimate nexus under cases like Balfour that would create a relationship between Mr. Arvon and Liberty Mutual such that there would be a duty on Liberty Mutual's part to disclose that information to him. Now, the adjuster certainly would have provided that information as a courtesy, had she been aware of that prior to suit being filed. But her willingness to provide that as a courtesy would not be out of any obligation on her part to do so. And so, the fact remains that there was no duty and there was no concealment. And in fact, in the appellant's opposition to motion for summary judgment in their statement of material facts, they didn't admit that there was no misrepresentation made or no affirmative misrepresentation made. At the joint appendix, page 254, the appellant writes, to the extent that Liberty Mutual is claiming that the record is no direct evidence that Ms. Fletcher, the claims handler, ever stated directly to Mr. Arvon, that Mr. Shakiba was the at-fault driver, this is correct. So, they acknowledge that there was no affirmative statement misrepresenting the at-fault driver. Now, and so, it simply did not happen. Now, it's unclear exactly why the Court of Special Appeals in Maryland found that there were misstatements made. I can only assume that the court took the appellant at their word when they filed that appeal. The issue presented by the appellant at time was stated in such a way that, are the parties at fault excused from liability when their insurer functioning as their agent and the real party of interest knowingly misrepresents or conceals their identity? I think the court, the Maryland Court of Special Appeals, took the claimant at his word, but there was no evidence of any concealment or misrepresentation in the underlying, in that underlying circuit court case. And so, anything the court said at that point on any negligent misrepresentation or concealment was dicta and had no real effect. So, the reality is the statements by Liberty Mutual were completely truthful. They were not in any way, they didn't have a special relationship with Mr. Arbon, the claimant, which would have created a special duty which would require them to disclose certain things like the identity of the appellant driver, although they would have. There was certainly no negligent claim handling, and there was no claim made for that. And there just simply was no misrepresentation. Now, one of the points that appellant makes in his brief deals with a misrepresentation, supposed misrepresentation by the insurance broker who sold the policy of insurance to Mr. Shakiba and Mr. Kadiporosti. And in the brief, I don't really fully understand it, but the brief seems to imply that they shouldn't have issued the policy based on the information that was provided to Liberty Mutual because their agent, Mr. Merjafari, was, you know, fraudulently obtained the policy. And in the brief, they cite some cases regarding insurable interest. The reality is, if there was a fraud made in this case, it was against Liberty Mutual. If Mr. Shakiba did not have an insurable interest or was not the insurable, they immediately investigated the accident. They immediately found coverage for the claim. Why do you say that? You had the police report before they had the police report, so you knew. I mean, I don't know why any of this matters, but you knew before the plaintiff knew because the plaintiff didn't have the police report. You weren't the last person to know. When the complaint was filed, they had it wrong. I don't know why that matters, but your statement that you were the last to know seems demonstrably false. Well, let me tell you what I mean. I'm certainly not trying to misstate any record. Liberty Mutual certainly knew that Mr. Goel was the at-fault driver. He was driving it with permission of Mr. Kataporoski. They absolutely knew that, but there was nothing in the police report that indicated that Mr. Shakiba did not have an insurable interest in the vehicle. There certainly was nothing in the police report that would have alerted Liberty Mutual into suspecting that the independent agent that sold insurance to Mr. Shakiba and Mr. Kataporoski did not provide an honest, accurate application. I see that my time's up. I'm happy to continue answering this question. I think answer it until my colleague thinks it's been answered. It's answered. Okay, thank you. Thank you very much for your argument. Sir, do you have any rebuttal? Mr. Cox, if you're going to have rebuttal. I have rebuttal, Your Honor. Okay, great. Your Honor, the statement in his deposition was, I think she said one time, she said that Mr. Shakiba is the one who is responsible for your accident. Any ambiguity in that statement was cleared up in the next couple of questions from Liberty Mutual, where they asked him whether he had a conversation and he affirmatively answered yes. That creates a question of fact for the trier of fact to decide. I think that if the lawyers who were responding to the motion for summary judgment had remembered this testimony and put it in the original motion, there would be no question that there is a question of fact raised, and it would have been impermissible for Judge Gessner to have allowed the jury to decide it. Appellee's counsel stated that Plano was at the scene, therefore he should know who hit him. He's ignoring the fact that Mr. Arbonne was taken by ambulance to a hospital. He states that his original counsel didn't get a police report. I know of no law that says you're required to get a police report. I think that Liberty Mutual made a misrepresentation that Mr. Shakiba was the responsible party, and that Mr. Arbonne relied on his detriment to that. I understand not having a cause of action maybe against Mr. Shakiba. Tell me why, just out of curiosity. Isn't it true that Mr. Shakiba, under the insurance policy, is the responsible party, whether he was driving or not? He's responsible for his permissive driver. His permissive driver is the person who caused the wreck, but from an insurance perspective, the responsible party is indeed the person who holds the insurance, because they're the ones that are going to have to pay the damages. Assuming we somehow looked through the Rule 59 issue, help me understand why I should interpret his statement as reflecting who the driver was as opposed to who the insurance responsible party is. I'm laughing because my associate said don't cite the dictionary, but if you look in the definition for responsible, it's the person who caused the event. If you look at it from that definition, then hearing that Mr. Shakiba is the responsible party, then to Mr. Arbonne, he's the one who caused the accident. Again, that is an issue to be weeded at a trial as to whether his statement was he caused my accident or whether there's some other term he was referring to in responsible, what that referred to. One of the things, I think it was Judge Richardson, where you said that they learned on June 27, when they got a copy of the complaint, they actually learned back on June 6, when Ms. Fletcher reviewed the file, they had received Mr. Rosen's letter on June 4. The second paragraph, the first line says, as you know, you're insured. Mr. Shakiba rear-ended Mr. Arbonne. She was on notice prior to any lawsuit being filed that they had the misunderstanding as to who the responsible party was. I think when you talk about the relationship between the parties, under the insurance article, it would be an unfair claims practice to make a misrepresentation of a pertinent fact. And if the jury were to believe that Liberty Mutual, someone at Liberty Mutual, probably one of the two people that he spoke to, told him that Mr. Shakiba was the responsible for his accident, then that is a misrepresentation of a pertinent fact. And to allow an insurance company to say, well, we don't have a duty to him, so we can make these statements. And therefore, when you rely to your detriment on what we have told you and end up suing the wrong party, shame on you. My time is done, Your Honor. Thank you very much. Well, that concludes our session for today, and we ask the clerk to adjourn court. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Diana Gribbon Motz, Albert Diaz, Julius N. Richardson